RECEIVED
DC, WESTERN DISTRICT OF
TONY R. MOORE, CLERK
4 · 8 · 15 yr

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JEFFREY C. SHAW (#52203-037) | DOCKET NO. 15-CV-21; SEC. P |
| VERSUS | JUDGE DRELL |
| WARDEN, ET AL. | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

Pro se Plaintiff Jeffrey C. Shaw, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)[1], on January 5, 2015 [Doc. #1], and amended complaints [Doc. #7, 8] on February 2, 2015. Plaintiff is an inmate in the custody of the Federal Bureau of Prisons ("BOP") incarcerated at the Federal Correctional Institution in Pollock, Louisiana (FCI-Pollock). He names as defendants the warden of FCI Pollock, Mr. Smith, Mr. Powell, K. Williams, and LaTaya Robinson, and claims that the defendants violated his constitutional rights under the Eighth Amendment.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

Plaintiff alleges that, from November 2013 - December 2013,

---

[1] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

another inmate, Jefferson, who was infected with tuberculosis, Hepatitis C, and HIV arrived at FCI Pollock and was placed in a cell with Plaintiff. FCI-Pollock was on lock-down from January 2014 to February 2014. During that time, a physician went to the cell to check on Jefferson, who had a "continuous cough." Plaintiff states that Jefferson was left in the cell with Plaintiff until "approx. 3/2015[2]." [Doc. #1, p.3]

Plaintiff admits that he, himself, was diagnosed with HIV in 2011. However, he claims he tested negative in July and August of 2014. [Doc. #15, p.1-2]

In April 2014, Plaintiff appeared at sick call for a lesion on his face, and he was "advised to give blood for Herpes."

Plaintiff was scheduled to have chest x-rays done on 1/2015 and 7/2015.

In July, 2014, Plaintiff was diagnosed with tonsilitis and was prescribed an antibiotic, which he complained did not work. Plaintiff claims that, today he suffers from daily severe headaches and abdominal pain because he was not prescribed a stronger antibiotic.

He complained that on July 11, 2014, he appeared at sick call and requested a tuberculosis test. Defendant Mr. Powell came from another room with a needle and injected Plaintiff "with what

_____

[2]Although Plaintiff says "approx. 3/2015," it appears that he meant 3/2014.

2

appeared to be Tuberculin." [Doc. #1, p.4] However, Plaintiff alleges that he was injected with something *other* than tuberculin. [Doc. #15, p.1]

Plaintiff states that he continuously requested medication "for the listed diseases" as well as another prescription for tonsillitis, but he was repeatedly denied. [Doc. #1, p.4] He states that all of his lab work came back negative. [Doc. #1, p.4]

Plaintiff alleges that in October or November 2014, he received another cell mate who had Hepatitis C. Plaintiff complained to the warden and health services administrator that he had mistakenly used the cellmate's razor, but emergency care was denied. [Doc. #1, p.4]

On December 1, 2014, Plaintiff went to sick call without having a scheduled appointment, and he requested medical care. Plaintiff states that someone in the medical department told him that he was infected with HIV, latent tuberculosis, and Hepatitis C, but that he would not receive any medication because he was not symptomatic. [Doc. #1, p.4-5]

Plaintiff alleges that, on an unspecified date, all of his lab work came back "negative" for HIV, tuberculosis, hepatitis A, B, and C, syphilis, and chlamydia. However, he then states that a "John Doe" from the medical department informed him that he did have HIV, latent tuberculosis, and Hepatitis C.

Plaintiff submitted documents showing that he was examined on April 21, 2014, for a lesion on his lip. Lab tests were ordered,

3

and he was instructed to follow-up as needed. [Doc. #15, p.8]

He was examined on June 19, 2014, with elevated blood pressure. He was educated on lifestyle changes, exercise, and diet modification. [Doc. #15-1, p.16] A chest x-ray was performed on June 23, 2014, which was negative.

Plaintiff was examined on July 11, 2014. He was diagnosed with hypertension, and received additional counseling about his diet and exercise. A tuberculosis skin test was performed, per Plaintiff's request. [Doc. #15, p.9] The results were negative. [Doc. #15-1, p.17]

On July 15, 2014, Plaintiff complained of tuberculosis again. He requested another skin test. However, "[a]fter the on duty registered nurse (RN) gathered materials to replant the skin test, [Plaintiff] then refused the test." [doc. #15-1, p.17] A consult for Psychology Services was set for July 17, 2014, but Plaintiff failed to appear for the appointment. [Doc. #15-1, p.17]

Plaintiff was examined in the medical department again on July 17, 2014. He complained of tuberculosis and other diseases. He was offered additional testing, which he declined. [Doc. #15-1, p.17] Another psychological appointment was scheduled for July 25, 2014. Again, Petitioner failed to appear.

On July 21, 2014, Plaintiff reported to sick call for irritated tonsils, ear pain, tuberculosis, and other physical complaints. Antibiotics were prescribed. A follow-up examination was performed on July 28, 2014. Numerous lab tests were ordered.

[Doc. #15-1, p.10]   Also on July 28, 2014, Plaintiff was instructed to monitor his sodium intake and to exercise daily. He was advised to take his Lisinopril medication daily.

Plaintiff requests "proper" medical treatment and 2.5 million dollars in damages.

### *Law and Analysis*

Plaintiff claims that he has been denied appropriate treatment for his medical complaints. Medical care claims when asserted by convicted prisoners, like Plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Estelle v. Gamble, 429 U.S. 97 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. Wilson v. Seiter, 501 U.S. 294 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. Thompson v. Upshur County, Texas, 245 F.3d 447, 458-59 (5th Cir. 2001). Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." Farmer v.

Brennan, 511 U.S. 825, 837 (1994); Reeves v. Collins, 27 F.3d 174 (5th Cir. 1994).

Plaintiff has not set forth allegations of deliberate indifference in this case. Plaintiff has received regular, consistent medical treatment for his complaints. He has been examined by registered nurses, medical doctors, and mid-level providers, and he has been offered psychological services. Diagnostic testing was conducted, including x-rays of abdomen and chest, a complete blood count with differential, Hepatitis A, B, and C testing, tuberculosis testing, urinalysis and urine cultures, rapid plasma screening test, herpes test, comprehensive metabolic profile, lipid profile, and an EKG. [Doc. #15-1, p.5-16] He received counseling on diet and exercise numerous times. He has also received dental care. [Doc. #15-1, p.17] Despite his belief that he suffers from tuberculosis and other serious ailments, the diagnostic tests have been negative. His chest x-ray was clear, his lab tests have been negative. He has been offered psychologic care, but he repeatedly failed to show up for appointments. He believes that the antibiotic treatment he received was not effective for his tonsil and ear infection in July 2014, but no further signs of infection were noted following treatment.

Even if the defendants had been negligent in treating Plaintiff, of which there is no indication, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."

6

Thompson, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997). The facts alleged by Plaintiff are not indicative of an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind. There is no indication that the defendants intended or desired for Plaintiff to suffer harm.

Plaintiff clearly disagrees with the diagnosis and treatment offered by the defendants, but **a disagreement with diagnosis and treatment cannot support a claim of deliberate indifference.** See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

*Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED WITH PREJUDICE** under 28 U.S.C. §1915(e)(2)(B) and 1915A.

*Objections*

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as**

7

supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this _____ day of April, 2015.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE